THE BOARD OF PARK COMMISSIONERS OF THE YOUNGSTOWN TOWNSHIP PARK DISTRICT ET AL., APPELLANTS, *v.* BUDGET COMMISSION OF MAHONING COUNTY ET AL., APPELLEES. (Five cases.)

[Cite as Youngstown Pk. Bd. v. Budget Comm. (1971), 26 Ohio St. 2d 153.]

(Nos. 70-607, 70-612, 70-613, 70-617 and 70-621— Decided May 26, 1971.)

*Messrs. Manchester, Bennett, Powers & Ullman, Mr. James E. Bennett, Jr., Mr. Henry C. Robinson, Mr. Theodore T. Macejko,* city solicitor, *Mr. Fred Coope* and *Mr. Vincent E. Gilmartin,* prosecuting attorney, for appellants.

*Mr. Nicholas Manos,* director of law, *Mr. Frank Woychik,* city solicitor, and *Mr. Thomas L. Corroto,* for appellees.

SCHNEIDER, J. We consider, first, appellants' second proposition of law, relative to the Board of Tax Appeal's exclusion of the entire anticipated proceeds of the city of Campbell's 1-½% income tax levy from the revenues available to that city in determining the relative actual needs of the subdivisions entitled to share in the Mahoning County local government fund.

The facts are undisputed. Since at least 1962, Campbell has levied and collected a 1% income tax ordained by its legislative authority, the city council. On August 1, 1968, the council enacted, subject to the approval of the electors of that city, an ordinance amending the 1% tax ordinance to provide for a 1-½% income tax levy. The electors subsequently approved the proposal. However, the amendatory ordinance, so approved, contained an exculpatory phrase to prevent the loss of the 1% levy if voter approval was not obtained. The legitimacy of none of these proceedings is questioned.

The court is unanimously persuaded to the conclusion that the substance of the entire series of events is that the revenues to be received from 1% of Campbell's income tax for 1970 derived from an authority other than the electorate and only the revenues received from the additional ½% of Campbell's tax derived "from an additional tax . . . voted by its electorate." R. C. 5739.23, as in effect from July 1, 1966, to August 18, 1969. 131 Ohio Laws 1379, 1792, and 133 Ohio Laws H 531 (p. 45, 46). Accordingly, the Board of Tax Appeals should have excluded the latter revenues only from its consideration of Campbell's relative actual needs.

In support of that conclusion, appellants urge upon us the additional facts that the amendatory ordinance contained the statement, "to provide an increase in the tax levied on income from one per cent to one and one-half per cent"; and that the resolution of the council formally submitting that ordinance to the board of elections, refers twice to that ordinance as "increasing the rate of" the income tax, rather than adopting a new tax, as claimed by appellees. We find this language no more controlling than that urged upon us by appellees on behalf of their contention, viz., that the amendatory ordinance expires at the end of

ten years, and with it, the full 1-½% tax. Nothing, of course, in the referendum prevents the council from again enacting the 1% tax at the end of ten years.

Moreover, appellees say, the ballot question was: "Shall the ordinance providing for a 1-½% levy on income . . . be passed?" This feature, together with the delayed expiration device, is urged as distinguishing this case from *Board of Park Commrs.* v. *Budget Comm.* (1970), 22 Ohio St. 2d 155. Carefully considering the purpose of the General Assembly in enacting R. C. 5739.23 containing the language quoted therefrom, as explained by Justice Duncan in that case (at page 159), we think not.

The validity of the adoption of the ordinance by the people is not questioned here. No one claims that the voters were misled. Neither can we assume, as appellees' contention would necessarily force us to do that the electorate was unaware of the preexistence of the 1% income tax levy. Consequently, we can allow neither the form of the ballot language, nor the expiration proviso to obscure the actual facts that a 1% income tax levy prevailed by will of the municipal legislative authority; that a further ½% tax was given life by will of the electorate; and that the entire tax is to continue both to burden and benefit the people for ten years hence.

Our conclusion is fortified when we consider, as we were not impelled to do in *Board of Park Commrs.* v. *Budget Comm., supra* (22 Ohio St. 2d 155), the devastating effect of appellees' contention upon the legislative purpose already alluded to. What would inhibit any, or indeed every subdivision, from precipitiously embarking upon a plan to offer all of its existing legislatively adopted tax levies and service charges to the referendum? If approved, the subdivision would claim the exclusion of all those revenues from consideration in the division of the local government fund. If defeated, the exculpatory phrase, borrowed from this case, would continue the tax. What would the municipal fathers have to lose? And if appellees' theory is sound that in this case the voters enacted the 1% portion as well as the ½% portion of the tax, there would be no need for proposing an increase to the tax rate in any such hypothetical referendum. The entire scheme could

be advertised publicly as a savings, that is, the chance to claim a larger share of the local government fund to which the people of the subdivision have already contributed through other taxes.

In view of the fact that this cause must be remanded for reallocation of the 1970 fund (22 Ohio St. 2d 155, 160), we need not consider at length the first proposition of law to the effect that the board's allocation would not permit the appealing subdivisions to adequately perform their governmental functions.

We are confident that the Board of Tax Appeals is well aware of its duty to determine the actual needs of each subdivision, as distinguished from their claimed needs or wants (paragraph four of the syllabus of *Brook Park* v. *Budget Comm.* [1968], 16 Ohio St. 2d 119; paragraph three of the syllabus of *Board of County Commrs.* v. *Willoughby Hills* [1967], 12 Ohio St. 2d 1); that the revenues available to each subdivision, except those received from an additional voted tax or service charge are a second dimension of that determination (paragraph four of the syllabus of *Lake County Budget Comm.* v. *Village of Willoughby Hills* [1967], 9 Ohio St. 2d 108); and that a third dimension is the relation of those actual needs to the actual needs of all other subdivisions (*Budget Comm.* v. *Board of Tax Appeals* [1964], 176 Ohio St. 98, 101).

In turn, this court recognizes the difficulty of fashioning such a determination and of arriving at the truth necessary to support it. In the absence of more definitive legislation, the Board of Tax Appeals apparently has not made its task any easier by not adopting prima-facie standards for determining relative actual needs, as suggested by appellants, pursuant to its rule-making power granted by R. C. 5703.02. But we are loath, on a bare record, to substitute our judgment for that of the board, even if the question does not involve the weight of the evidence, whether or not conflicting.

On the other hand, it has been called to our attention that in this case the board, by announcement at the opening of the proceedings, refused to permit cross-examination of witnesses by any party or counsel. We remind the board, therefore, that one of the most incisive instruments

for cutting through to the truth is cross-examination. It is the swift, sharp sword of the fact-finding process.

We recognize, as well, the difficulty which multi-party proceedings impose on orderly procedure. But those difficulties are surmountable. They are, in fact, surmounted daily as a matter of course in courts of law. Reasonable arrangements to permit the thorough examination of witnesses, while preventing repetition and confusion, are part of the working tools of every trial judge and lawyer. They should be utilized as well by fact-finding administrative bodies. Prohibitory edicts which resolve these difficulties only by eradicating them, eradicate due process as well.

*Decision reversed and remanded.*

O'NEILL, C. J., HERBERT, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.